John A. Furutani [SBN #161757]
FURUTANI & PETERS, LLP
350 W. Colorado Blvd., Suite 200
Pasadena, CA 91105
Telephone: (626) 844-2437
Facsimile: (626) 844-2442
E-mail: JAFurutani@furutani-peters.com

Mark C. Peters [SBN 160611]
DUCKWORTH · PETERS · LEBOWITZ LLP
235 Montgomery Street, Suite 1010
San Francisco, California 94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556
E-mail: mark@dplsf.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| NANCY SWEET,<br><br>     Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC. and DOES 1 through 25, inclusive,<br><br>     Defendants. | Case No. CV 09-02653 DDP (RZx)<br><br>Assigned to Hon. Dean D. Pregerson<br><br>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT<br><br>DATE:  August 2, 2010<br>TIME:   10:00 a.m.<br>CTRM: 3 |

PLAINTIFF'S MEMO. OF P&AS ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................iii

INTRODUCTION ...........................................................................................................1

SUMMARY JUDGMENT MUST BE DENIED ..........................................................2

COLLATERAL ESTOPPEL RENDERS THE PRELOAD SUPERVISOR POSITION NON-EXEMPT...........................................................................................................3

RELIANCE ON FEDERAL LAW IS MISPLACED UNLESS IT IS SPECIFICALLY INCORPORATED INTO WAGE ORER NO. 9...................................................6

SUMMARY JUDGMENT MUST BE DENIED AS THERE WAS NO DISCRETION AND INDEPENDENT JUDGMENT..................................................................7

NUMEROUS MATERIAL ISSUES OF FACT EXIST ON THE MAJORITY OF THE ELEMENTS OF THE EXECUTIVE AND ADMINISTRATIVE EXEMPTIONS ...................9

      A.    UPS CANNOT SATISFY THE "PRIMARILY ENGAGED" ELEMENT CONTAINED IN BOTH EXEMPTIONS ..........................10

      B.    PLAINTIFF LACKED THE ABILITY TO HIRE, FIRE OR PROMOTE, AND WAS TOLD SHE HAD NO AUTHORITY OVER SUCH MATTERS .......................................................................11

      C.    PLAINTIFF WAS NOT IN CHARGE OF A RECOGNIZED UNIT .................................................................................................12

      D.    THE FIRST ELEMENT OF THE ADMINISTRATIVE EXEMPTION FAILS AS PLAINTIFF WAS A PRODUCTION WORKER .................................................................................................12

THE MCA IS A DAILY EXEMPTION WHICH DOES NOT APPLY ...................................16

      A.    29 U.S.C. § 213(b)(1) DOES NOT APPLY AS NO FEDERAL CLAIMS HAVE BEEN BROUGHT........................................................16

      B.    § 3(L) OF WAGE ORDER 9 DOES NOT APPLY.................................17

      C.    PLAINTIFF'S HOURS OF SERVICE WERE NOT REGULATED BY THE DEPARTMENT OF TRANSPORTATION............................20

-i-

D.   PLAINTIFF'S HOURS OF SERVICE WAS NOT REGULATED
BY 13 CCR § 1200 ET SEQ..................................................................22

E.   THE CALIFORNIA MCA DOES NOT EXEMPT UPS FROM
PAYING FOR ALL HOURS WORKED ...................................................22

PLAINTIFF WAS DENIED MEAL AND REST BREAKS .......................................24

THE UNFAIR COMPETITION CLAIM IS VALID ..................................................24

THE WAGE STATEMENT CLAIMS ARE VALID...................................................24

SWEET CAN RECOVER CIVIL PENALTIES ..........................................................25

CONCLUSION..................................................................................................................25

PLAINTIFF'S MEMO. OF P&AS ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ...... 2

*Bell v. Farmers Insurance Exchange*, 87 Cal.App.4th 805 (2001) ......................................... 14, 15

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*,

402 U.S. 313, 328-329, 91 S.Ct. 1434, 1442-1443, 28 L.Ed.2d 788 (1971) ................................. 4

*Bratt v. County of L.A.*, 912 F.2d 1066, 1070 (9th Cir. 1990) ..................................................... 14

*Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949 (2005) ................................................. 23

*Cortez v. Purolator Air Filtration Products Co.* 23 Cal.4th 163, 178 (2000) ............................... 2

*D'Este v. Bayer Corporation* 565 F.3d 1119, 1125 (9th Cir. 2009) ............................................. 8

*Dalheim v. KDFW-TV*, 918 F.2d 1220 (5th Cir. 1990) .................................................... 14, 15, 18

*Gomez v. Lincare,* 173 Cal.App.4th 508 (2009) .............................................................. 17, 18, 19

*In re Russell*, 76 F.3d 242, 244-45 (9th Cir.1996) ........................................................................ 5

*Martinez v. Combs*, 49 Cal.4th 35 ................................................................................................ 6

*Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555 ................................. 7

*Parklane Hosiery Co. v. Shore* (1979) 439 U.S. 322 .................................................................. 4

*Roos v. Red* (2005) 130 Cal. App. 4th 870, 879 ......................................................................... 5

*Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir.2007) ............................. 5

*U.S. v. Mendoza*, 464 U.S. 154 at 159 n. 4, 104 S.Ct. 568 (1984) ............................................. 4

*United States v. Weems*, 49 F.3d 528, 532 (9th Cir.1995) ........................................................... 4

*Wamboldt v. Safety-Kleen Systems, Inc.*, 2008 WL 728884 (N.D. Cal.) ............................... 18, 19

*Watkins v. Ameripride Services*, 375 F.3d 821 at 830 (9th Cir. 2004) ....................................... 16

*White v. Digex, Inc.* 149 Fed.Appx 655, 2005 WL 2277479 (C.A.9 (Cal.)) ............................ 8, 9

PLAINTIFF'S MEMO. OF P&AS ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**Statutes**

Fed.R.Civ.P. 56 ................................................................................................ 2

29 U.S.C. § 213 ......................................................................................... 16, 17

29 C.F.R. §541.104 ......................................................................................... 12

29 C.F.R. § 541.205 .......................................................................... 13, 14, 15

29 C.F.R. § 782.0 ........................................................................................ 16, 17

49 C.F.R. § 395.1 ............................................................................................. 21

49 C.F.R. § 395.8 ........................................................................................ 20, 21

49 C.F.R. §§395.1-395.13 ........................................................................... 17, 20

13 CCR § 1200 .................................................................................................. 22

Business and Professions Code § 17200 ........................................................... 2

Labor Code §§ 225.5 ........................................................................................ 25

Labor Code § 226.3 .......................................................................................... 25

Labor Code § 515 ............................................................................................. 24

Labor Code § 558 ............................................................................................. 25

Labor Code § 1174.5 ........................................................................................ 25

Labor Code § 1194 ........................................................................................... 23

Labor Code § 2699.5 ........................................................................................ 25

Vehicle Code §§ 34500 .................................................................................... 22

Vehicle Code §§ 34500.1 ................................................................................. 22

PLAINTIFF'S MEMO. OF P&AS ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# I

# INTRODUCTION

Defendant's Motion for Summary Judgment must be denied in its entirety. Not only do triable issues of material fact exist, but defendant is collaterally estopped from asserting that plaintiff was an exempt employee as a preload supervisor because defendant lost that battle before this very Court in *Marlo v. United Parcel Service, Inc.*, Case Number CV 03-4336 DDP (RZx), where the jury found that Mr. Marlo was a non-exempt employee as a hub and preload supervisor.

UPS also asserts that plaintiff is exempt under the federal Motor Carrier Act ("MCA"). However, the federal MCA is irrelevant because it was not expressly incorporated into California Wage Order 9, and the California MCA is far narrower than the federal version. Further, recent cases make clear that the California MCA is a daily exemption, not an overall exemption, and that it applies only to regular drivers. It is undisputed that plaintiff is not a regular driver, and therefore the California MCA does not apply.

UPS also fails to submit evidence for the entire time period at issue, which runs from May 6, 1999 to the present. For example, UPS offers no declaration or evidence for the time periods of (1) September 2001 to May 2003; (2) August 7, 2007 to November 6, 2007; and (3) June 2009 to August 31, 2009. Thus, summary judgment cannot be granted for such time periods as UPS has failed to produce evidence for these time periods.

UPS further argues that injunctive relief cannot be given because it cannot constitute a separate cause of action, yet it is undisputed that plaintiff is a current employee and injunctive relief is an available remedy.

As will be shown below, because all of plaintiff's claims rise and fall on whether she was a non-exempt employee, and triable issues of material fact exist, the motion must be denied in its entirety.

## II

## SUMMARY JUDGMENT MUST BE DENIED

Defendant's motion for summary judgment or partial summary judgment must be denied as multiple material triable issues of fact exist. "Summary judgment is appropriate where no genuine issue of material fact exists and a party is entitled to prevail in the case as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). UPS is not entitled to prevail as a matter of law. UPS is collaterally estopped from contesting liability for the preload supervisor position, the federal MCA does not apply, and material triable issues of fact exist as to all positions held by plaintiff in this litigation. Accordingly, summary judgment must be denied.

It is undisputed the burden of proof, on this motion and at the time of trial, is on Defendant to prove each and every element of the administrative and executive exemptions under California's IWC Wage Order No. 9 (codified at §11090 of Title 8 of the California Code of Regulations). It is also undisputed that this case and each of the causes of action rises and falls on a single issue: whether plaintiff was properly classified as an exempt employee when she was an on road, preload and PDS supervisor. If UPS fails to establish that plaintiff was exempt, plaintiff prevails on each cause of action, including the Sixth Cause of Action for Unfair Competition (Business and Professions Code § 17200). "[A]n order that a business pay to an employee wages unlawfully withheld is consistent with the legislative intent underlying the authorization in section 17203 for orders necessary to restore to a person in interest money or property acquired by means of an unfair business practice." *Cortez v. Purolator Air Filtration Products Co.* 23 Cal.4th 163, 178 (2000).

As the multiple opposing declarations demonstrate, at a minimum there are triable issues of fact and summary judgment must be denied. Plaintiff did not regularly or customarily exercise discretion and judgment. She did not have the power to hire, fire or promote, and her recommendations were not given any considerable weight. The evidence establishes that plaintiff did not manage a customarily recognized unit or subdivision of UPS. The evidence sets forth that plaintiff was not an administrative employee, but instead was a production worker who was required to be on the floor of preload operations or out on route with a UPS driver. Further, the documents attached to plaintiff's declaration, including UPS' Basic Time Values, UPS' work methods for hourly employees under plaintiff's supervision, and job breakdown analyses ("JBAs") for plaintiff's supervisor positions establish that plaintiff's duties and responsibilities were mandated and that plaintiff was required to "supervise" employees by making sure they performed their specific job tasks exactly how and when UPS demanded for their respective operations.

For the reasons set forth herein and contained in the supporting documents filed herewith, Defendant has not and cannot meet its substantial burden on this motion. The motion must be denied.

### III

### COLLATERAL ESTOPPEL RENDERS THE PRELOAD SUPERVISOR POSITION NON-EXEMPT

In May 2009, in a trial before this very court, a jury determined that Michael Marlo was misclassified by UPS as a non-exempt employee while he was a preload supervisor in UPS' Lancaster and Van Nuys facilities. See Marlo Dec., Par. 2 and Request for Judicial Notice No. 1. Accordingly, as plaintiff Sweet held the same preload supervisor position in Lancaster as Mr. Marlo, UPS is collaterally estopped from challenging the determination that the preload supervisor position in

Lancaster is a non-exempt position. Summary judgment must be denied and the Court may instead award Sweet partial summary judgment for this position.

Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. *Parklane Hosiery Co. v. Shore* (1979) 439 U.S. 322, 326, 99 S.Ct. 645, 649, citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328-329, 91 S.Ct. 1434, 1442-1443, 28 L.Ed.2d 788 (1971).

Non-mutual collateral estoppel refers to the use of collateral estoppel by a nonparty to a previous action to preclude a party to that action from relitigating a previously determined issue in a subsequent lawsuit against the nonparty. *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 320-30, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). "Offensive" use of non-mutual collateral estoppel occurs when a plaintiff seeks to prevent a defendant from relitigating an issue that the defendant previously litigated unsuccessfully against a different party. *U.S. v. Mendoza*, 464 U.S. 154 at 159 n. 4, 104 S.Ct. 568 (1984).

Offensive non-mutual collateral estoppel applies where (1) the issue sought to be litigated is sufficiently similar to the issue presented in an earlier proceeding and sufficiently material in both actions to justify invoking the doctrine, (2) the issue was actually litigated in the first case, and (3) the issue was necessarily decided in the first case. *United States v. Weems*, 49 F.3d 528, 532 (9th Cir.1995).

"Under California law, '[a] party is collaterally estopped from relitigating an issue previously adjudicated if: (1) the issue necessarily decided in the previous lawsuit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the

estoppel is asserted was a party, or in privity with a party, to the previous suit.' " *In re Russell*, 76 F.3d 242, 244-45 (9th Cir.1996) (quoting *In re Joshua J.*, 39 Cal.App.4th 984, 46 Cal.Rptr.2d 491, 497 (1995)). See also *Roos v. Red* (2005) 130 Cal. App. 4th 870, 879.

Where, as here, the party seeks to invoke non-mutual offensive issue preclusion, they must also establish that: (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action. See *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir.2007).

Plaintiff easily satisfies the foregoing elements. It is undisputed that plaintiff was a class member in *Marlo* prior to decertification, and that she held the same preload supervisor positions as Mr. Marlo (see Marlo Dec., Par. 3). Thus, her claims and Mr. Marlo's claims are identical, and the issues of whether UPS properly classified the preload supervisor positions as exempt are identical in both actions. From the *Marlo* judgment, it is undisputed that the issues were actually litigated, that a final judgment on the merits was rendered after six years of litigation, and that UPS was a party to the action.

Further, UPS had a full and fair opportunity to litigate whether it properly classified the hub and preload supervisor positions as exempt positions. The *Marlo* litigation lasted over six years, included a summary judgment reversal by the Ninth Circuit, and for four years was litigated as a class action. Trial lasted eight days, followed by over three days of deliberation by the jury.

Thus, all of the elements to establish offensive non-mutual collateral estoppels are present. As such, this Court should determine that plaintiff is non-exempt as a preload supervisor, and deny the requested summary judgment.

## IV

## RELIANCE ON FEDERAL LAW IS MISPLACED UNLESS IT IS SPECIFICALLY INCORPORATED INTO WAGE ORDER NO. 9

In the May 20, 2010 decision in *Martinez v. Combs*, 49 Cal.4th 35, --- Cal.Rptr.3d ---, 2010 WL 2000511 (Cal. 2010) at *19, the California Supreme Court stated:

> "The IWC has on occasion deliberately incorporated federal law into its wage orders. However, "where the IWC intended the FLSA to apply to wage orders, it has specifically so stated." (*Morillion v. Royal Packing Co., supra,* 22 Cal.4th 575, 592.) …
> "We have previously cautioned against "confounding federal and state labor law" (*Ramirez v. Yosemite Water Co., supra,* 20 Cal.4th 785, 798) and explained "that where the language or intent of state and federal labor laws substantially differ, reliance on federal regulations or interpretations to construe state regulations is misplaced" (*ibid.;* see also *Morillion v. Royal Packing Co., supra,* 22 Cal.4th 575, 588). Courts must give the IWC's wage orders independent effect in order to protect the commission's delegated authority to enforce the state's wage laws and, as appropriate, to provide greater protection to workers than federal law affords. (See *Morillion v. Royal Packing Co., supra,* 22 Cal.4th 575, 592; *Ramirez v. Yosemite Water Co., supra,* 20 Cal.4th 785, 798.) We therefore apply the applicable wage order according to its terms, having in mind its distinct language, history and function in the context of state wage law."

*Martinez, supra,* at *19 (emphasis added).

UPS spends much of its motion arguing inapplicable federal law for this California case, such as relying on cases involving "discretionary powers" instead of the proper standard for this case of the "regular and customary exercise of discretion and independent judgment". As the California Supreme Court has made clear, unless the wage order specifically incorporates federal law, federal law is

inapplicable. If California law is more protective of an employee than federal law, federal law cannot be relied upon.

In this litigation, it is undisputed that Wage Order 9 (8 CCR § 11090) applies and that there is a distinct difference between the federal Fair Labor Standards Act ("FLSA") and Wage Order 9, as Wage Order 9 is narrower than the FLSA. This distinction is most clear with respect to the Motor Carrier Act ("MCA") exemption, since Wage Order 9 never incorporates the federal MCA, and the California MCA is far narrower than the federal MCA, as shown below in Section VII.

UPS ignores this great distinction and argues solely that the federal MCA applies, when nothing could be further from the truth. Accordingly, this Court must be mindful to avoid UPS' trap and to only apply federal law and rely on federal cases when federal law has been expressly incorporated into Wage Order 9.

**V**

**SUMMARY JUDGMENT MUST BE DENIED AS THERE WAS NO DISCRETION AND INDEPENDENT JUDGMENT**

In order for UPS to prevail, it must establish as a matter of law that plaintiff did not customarily and regularly exercise discretion and independent judgment. Failure to do so dooms this motion as this element must be satisfied in both the executive and administrative exemptions.

In *Nordquist v. McGraw-Hill Broadcasting Co.* 32 Cal.App.4th 555, 563 (1995), the Court specifically held that "An employee who merely applies his or her knowledge in following prescribed procedures or in determining which procedures to follow, or who determines whether specified standards are met ... is not exercising discretion and judgment…". *Nordquist* at 563.

Plaintiff's opposing declaration clearly establishes that under the criteria set forth in *Nordquist*, she does not regularly and customarily exercise discretion and

independent judgment in any of her positions. Therefore, the analysis must end at this point and summary judgment must be denied as to the executive and administrative exemptions, as this is an essential element to both the executive and administrative exemptions under California Wage Order 9.

The question of whether an employee customarily and regularly exercises discretion and independent judgment is a difficult task and is not appropriate for summary judgment, especially where as here the parties take such polar positions. In fact, on May 5, 2009 in *D'Este v. Bayer Corporation* 565 F.3d 1119, 1125 (9th Cir. 2009), the Ninth Circuit stayed an appeal from a summary judgment in favor of an employer on an overtime claim and requested the California Supreme Court to give state guidance regarding this issue. The Ninth Circuit found:

> "The California Court of Appeal has held that an employee who merely relies on 'skills and knowledge' does not qualify for this exemption. *Nordquist*, 32 Cal.App.4th at 563, 38 Cal.Rptr.2d 221. In order to exercise 'discretion and independent judgment,' the employee must be involved in making decisions related to 'matters of consequence,' and which are of 'real and substantial significance to the policies or general operations of the business of the employer or the employer's customers.' *Id.*" *D'Este* at 1125

Notably, UPS has failed to assert that any of plaintiff's decisions related to matters of consequence or were real and substantial to UPS' business operations.

In *White v. Digex, Inc.* 149 Fed.Appx 655, 2005 WL 2277479 (C.A.9 (Cal.)), the Ninth Circuit reversed summary judgment against an employee and found:

> "[T]here is a triable issue of fact whether White's position required "exercise of discretion and independent judgment" to the extent required for exemption. California looks to federal regulations for guidance in interpreting the exemption. *See Bell*, 87 Cal.App.4th at 814-15, 105 Cal.Rptr.2d 59. The federal regulations required "consistent," or even " customar[y] and regular[ ]," exercise of discretion and judgment. 29 C.F.R. §§ 541.2 (addressing administrative exemption), 541.3 (1998) (addressing professional exemption); *see also Nordquist,* 32 Cal.App.4th at 563, 38 Cal.Rptr.2d 221. The requirement "implies that the person has the authority

or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." *Bothell,* 299 F.3d at 1129 (quoting 29 C.F.R. § 541.207(a) now 29 C.F.R. § 541.202(c)). It is not to be confused with the "use of skill in applying techniques, procedures, or specific standards." *See id.* (quoting 29 C.F.R. § 541.207(c) now 29 C.F.R. § 541.202(e))." *White* at 657.

It is evident from the Sweet, Marlo, Mazza, Argyris, Messina and Williams declarations that plaintiff did not have discretion or independent judgment, let alone regularly or customarily. Plaintiff, like all the declarants, was required by her managers and division managers to strictly follow UPS' plans, to determine whether employees under her supervision were meeting UPS' minimum established standards, and was required to ensure that the employees under her supervision were strictly following UPS' complex methods and procedures.

As such, plaintiff was relying on her skill and knowledge in making decisions, that plaintiff was exercising skill in applying techniques, procedures or methods. Plaintiff was not involved in making decisions related to matters of consequence to UPS which were of real and substantial significance to UPS' polices or general operations, and no evidence has been presented by UPS on this topic. In fact, all of the manager and division manager declarations submitted by UPS have been rebutted, thus raising triable issues of material fact which mandate that neither the executive or administrative exemptions can be satisfied. Thus, the "discretion and independent judgment" element contained in both the administrative and executive exemptions cannot be established by UPS, and summary judgment must be denied.

# VI

## NUMEROUS MATERIAL ISSUES OF FACT EXIST ON THE MAJORITY OF THE ELEMENTS OF THE EXECUTIVE AND ADMINISTRATIVE EXEMPTIONS

There are a multitude of disputed material issues of fact which prevent summary judgment. The first obvious dispute is the fact that UPS cannot satisfy

the "discretion and independent judgment" element of the executive and administrative exemptions because the evidence cited in plaintiff's opposing declarations establish that plaintiff WAS NOT exercising discretion and independent judgment. At this point alone summary judgment must be denied.

The next obvious disputes are the facts that with respect to the executive exemption, (1) plaintiff did not manage a recognized unit or subdivision of UPS, (2) she did not have the ability to hire, fire or promote and any recommendations he could make would not have been given any significant weight, and (3) UPS has failed to establish that plaintiff was primarily engaged in performing exempt duties. With respect to the administrative exemption, UPS cannot establish any of the required elements.

A. UPS cannot satisfy the "primarily engaged" element contained in both exemptions.

While UPS sets forth multiple identical declarations which assert that plaintiff's managers and division manager "expected" plaintiff to spend more than half of his time performing exempt duties, these managers: (1) do not quantify the amount of time they spent observing plaintiff; (2) admit that they were not in close supervision with her; (3) only saw plaintiff "from time to time"; (4) could not observe what plaintiff was doing while on road with a driver; (5) were not in the same office with plaintiff or on road with her; and (6) speak about their "expectations" or what they "would have" done had she made recommendations.

The entirety of these manager and division manager declarations are nothing but speculation, and therefore irrelevant. They simply lack the personal knowledge and evidence to support the primarily engaged element, because it is evident that they have no knowledge as to how plaintiff spent her time. Thus, UPS cannot satisfy the "primarily engaged" element which is required in both the executive and administrative exemptions, and therefore summary judgment must be denied.

1    UPS also fails to define all of plaintiff's duties for each position, and the

2    determination of whether a specific job task is exempt or non-exempt is one for the

3    Court to make, not UPS. As made clear in *Ramirez v. Yosemite Water Co.,* 20

4    Cal.4[th] 785, 802 (1999), "the court should consider, first and foremost, how the

5    employee actually spends his or her time". Yet UPS offers no evidence with regard

6    to how plaintiff actually spent her time. Instead, UPS offers irrelevant assertions

7    such as "if she spent more than 50% of her time performing hourly work, hourly

8    workers would have complained to me" and  "I expect Sweet to spend less than

9    50% of her time on hourly work such as loading, unloading and sorting packages".

10   These are clearly assumptions, and not evidence based on personal knowledge.

11        Therefore, again the exemptions fail and summary judgment must be denied.

12   <u>B.     Plaintiff lacked the ability to hire, fire or promote, and was told she had no</u>

13   <u>authority over such matters.</u>

14        With regard to the "hire and fire" element of the executive exemption, it is

15   undisputed that plaintiff did not have the authority to hire, fire or promote. UPS

16   also failed to give any particular weight to any recommendations by plaintiff, as

17   the few times plaintiff attempted to have an employee fired, plaintiff was told by

18   Julie Senaga, Keith Rini and Herb Wilson that she had no such authority, and

19   plaintiff's concerns were ignored.

20        For example, when a part-time supervisor threatened plaintiff and plaintiff

21   attempted to have the employee terminated, Julie Senaga instead reprimanded

22   plaintiff and told her she had no power to do so. Instead of the part-time supervisor

23   being removed from the UPS center, UPS instead removed plaintiff. Keith Rini

24   and Herb Wilson also told plaintiff – in front of other employees – that she could

25   not have any employee fired. Thus, triable issues of material fact exist on this

26   element and summary judgment must be denied.

27

28

C.     Plaintiff was not in charge of a recognized unit.

With regard to the first element of the executive exemption, that plaintiff was in charge of a customarily recognized department or subdivision of UPS, plaintiff has submitted multiple declarations which dispute this element.

With regard to this element, 29 CFR §541.104(a) states:

> "In order properly to classify an individual as an executive he must be more than merely a supervisor of two or more employees; nor is it sufficient that he merely participates in the management of the unit. He must be in charge of and have as his primary duty the management of a recognized unit which has a continuing function." (emphasis added).

As the Sweet, Marlo, Argyris, Mazza, Williams and Messina declarations make clear, plaintiff was not in charge of any recognized department or subdivision of UPS. The lowest recognized department or subdivision at UPS is a center. Plaintiff never received a separate cost statement or budget for her employees, her performance was based on the center's performance, and at best, plaintiff merely participated in management, but was never in charge. Thus, triable issues of material fact exist, and summary judgment must be denied.

D.     The first element of the administrative exemption fails as Plaintiff was a production worker.

As shown above, Defendant has failed to conclusively establish the "primarily engaged" and "discretion and independent judgment" elements of the administrative exemption, and therefore UPS' motion must be denied. Yet there is even a larger, more fundamental issue which blocks summary judgment: Plaintiff's supervisor duties in UPS' operations made Plaintiff a production worker and not an administrative employee.

If the Court finds that Plaintiff was a production worker, defendant cannot meet the first element of the administrative exemption: that Plaintiff's duties and responsibilities involve the performance of office or non-manual work directly

related to management policies or general business operations of his/her employer or his/her employer's customers.

29 CFR § 541.205[1](a) provides that the phrase "directly related to management policies or general business operations of his employer" describes those activities relating to the administrative operations of a business <u>as distinguished from "production."</u> Therefore, if Plaintiff is deemed a production worker, as she must be, the administrative exemption cannot apply and summary judgment must be denied.

The first element of the administrative exemption requires that plaintiff 's duties and responsibilities involve the performance of office or non-manual work directly related to management policies or general business operations of UPS. This element cannot be satisfied because plaintiff was not involved in office work, and plaintiff instead was a production worker who could, at any time, be required by UPS to deliver or pick up packages, as UPS' declarations make clear. In fact, plaintiff was frequently directed to deliver packages in her own car on her way home.

Further, as the Sweet and Marlo declarations make clear, plaintiff frequently handled packages after her managers and division manager sent hourly employees home, whereupon the manager and division manager directed Sweet and other supervisors to perform this hourly work as there were no union witnesses around to see the work being performed.

The administrative/production dichotomy requires the finder of fact to "determine whether [the employees] carry out [the employer's] day-to-day operations…or whether they administer the business affairs…[of the company]."

_____

[1] Title 8, California Code of Regulations § 11090(1)(A)(2)(f) specifically references this section.

*Bell v. Farmers Insurance Exchange* (2001) 87 Cal.App.4[th] 805 (*Bell II*). The Ninth Circuit has likewise recognized the administrative exemption is restricted to those employees who have responsibility for how the business is run.

> "advising management" …is directed at advice on matters that involve policy determinations, i.e., how a business should be run or run more efficiently, not merely providing information in the course of the customer's daily business operation….Here, although probation officers provide recommendations to the courts, these recommendations do not involve advice on the proper way to conduct the business of the court, but <u>merely provide information which the court uses in the course of its daily production activities</u>.
> *Bratt v. County of L.A.*, 912 F.2d 1066, 1070 (9th Cir. 1990)(emphasis added)

In this case, it is undisputed that as a preload, PDS and on road supervisor Plaintiff supervised UPS' operations employees and drivers and was concerned with getting the employees to perform in accordance with UPS' specified standards and procedures and make sure the drivers picked up and delivered packages to and from customers. She often performed hourly work. Plaintiff did not set UPS policy, plan objectives or negotiate salaries or benefits, and only provided information that UPS could use in the course of its daily production activities, similar to *Bratt*. Sweet Decl. ¶ 56.

Likewise, in *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990), the Circuit Court found that producers, directors and assignment editors employed in the news and programming departments of a television station were non-exempt production workers. *Dalheim* at 1231-1232. For example, the *Dalheim* court found that news producers were not responsible for setting business policy, planning the long-term or short-term objectives of the news department, promoting the newscast, negotiating salary or benefits with other department personnel, or any of the other types of administrative tasks noted in 29 CFR § 541.205(b). The District Court determined, based on those facts, that the "duties of a producer clearly relate

1 | to the production of KDFW news department product and not to defendant's

2 | administrative operations". *Dalheim* at 1231.

3 |     In *Bell II*, the Court held that an important factor in the administrative/

4 | production worker analysis was whether the employees carry out the employer's

5 | day to day operations as opposed to administering the business affairs of the

6 | company. *Bell II, supra* at 822-823. In *Bell II*, the Court found that the work of the

7 | plaintiff claims representatives was "squarely on the production side of the

8 | administrative/production worker dichotomy" because the plaintiffs were fully

9 | engaged in performing the day-to-day activities of their employer's claims

10 | adjusting business. *Bell II, supra* at 826.

11 |     Similarly, Plaintiff carried out UPS' day to day package delivery operation.

12 | Plaintiff was not responsible for: setting UPS' business policy; planning the long-

13 | term or short-term objectives of UPS' operations (which is done by UPS' corporate

14 | office, Industrial Engineering Department, as well as by the Region, District,

15 | Division and center-level managers); promoting UPS; negotiating salary or

16 | benefits; or any of the other administrative tasks noted in 29 CFR § 541.205(b). [2]

17 | Sweet Decl. ¶ 56. Accordingly, the work performed by Plaintiff clearly related to

18 | UPS' package delivery operations and not to UPS' administrative operations,

19 | which were handled by other UPS departments such as Business Development,

20 | Human Resources, and Finance and Accounting, among others.

21 |     Like the producers, directors and assignment editors in *Dalheim*, Plaintiff

22 | fell squarely on the production side of UPS' vast operations. She directly

23 | _____

24 | [2] Title 8, California Code of Regulations § 11090 sets forth the exemptions at issue

25 | in this litigation. With regard to the administrative exemption, 8 CCR §

26 | 11090(1)(A)(2)(f) provides that the activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed

27 | under the Fair Labor Standards Act: 29 C.F.R. §§ 541.201-205, 541.207-208, 541.210 and 541.215.

28 |

participated in the package distribution and delivery process of UPS. Therefore, as a production worker, the administrative exemption cannot apply and summary judgment must be denied.

## VII

## THE MCA IS A DAILY EXEMPTION WHICH DOES NOT APPLY

UPS falsely asserts that the federal MCA exempts plaintiff's overtime claims. UPS' entire analysis is based on federal law, as shown by its reliance on 29 U.S.C. § 213(b)(1) and 29 CFR § 782.0 et seq. However, because this case is based on California law, and California's MCA is narrower than the federal FLSA, the federal FLSA cannot apply and UPS' argument is therefore without merit.

While UPS may assert that a hybrid of federal law was used in the *Marlo* case, that MCA standard was by stipulation of the parties after UPS asserted the MCA defense after discovery had closed. See Furutani Dec., Pars. 1-6. Further, recent cases clearly set forth that California's MCA is narrower than the federal MCA, and that California's MCA is at best a daily exemption.

A.    29 U.S.C. § 213(b)(1) does not apply as no federal claims have been brought.

It is undisputed that all of plaintiffs' claims are based on California law, and that none of plaintiff's claims are based on the federal Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 213(b)(1) is part of the FLSA and addresses exemptions to the FLSA. Because no FLSA claims have been brought by plaintiff, 29 U.S.C. § 213(b)(1) does not apply.

The federal MCA does not pre-empt California law, as made clear by Judge Fletcher's concurring opinion in *Watkins v. Ameripride Services*, 375 F.3d 821 at 830 (9th Cir. 2004):

"California has the power to adopt a narrower exemption from its overtime laws than the Motor Carrier Act exemption under the FLSA. Every appellate court to consider the question (including our court) has concluded that state

- 16 -

overtime laws are not preempted by the Motor Carrier Act exemption under the FLSA. *See Agsalud v. Pony Express Courier Corp. of Am.,* 833 F.2d 809, 810 (9th Cir.1987); *see also Overnite Transp. Co. v. Tianti,* 926 F.2d 220, 221-22 (2d Cir.1991); *Pettis Moving Co. v. Roberts,* 784 F.2d 439, 441 (2d Cir.1986); *Williams v. W.M.A. Transit Co.,* 472 F.2d 1258, 1263 (D.C.Cir.1972); *Dep't of Labor and Indus. of the State of Wash. v. Common Carriers, Inc.,* 111 Wash.2d 586, 762 P.2d 348, 349 (1988)."

Accordingly, because the FLSA's MCA exemption does not pre-empt California law, and is not specifically incorporated into Wage Order 9, defendant's MCA argument pursuant to 29 U.S.C. § 213(b)(1) fails as a matter of law.

B.    § 3(L) of Wage Order 9 does not apply.

UPS asserts that plaintiffs are exempt pursuant to § 3(L) of Wage Order 9. UPS is wrong. Wage Order 9, § 3(L) states in its entirety:

"The provisions of this section are not applicable to employees whose hours of service are regulated by:
(1)    The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers; or
(2)    Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 and the following sections, regulating hours of drivers."

Notably, Wage Order 9 does not contain any reference to 29 CFR § 782, nor does 49 CFR §§395.1-395.13. Therefore, 29 CFR § 782.0 et seq. – of which UPS relies on heavily - has no bearing on this analysis since it was not specifically incorporated into Wage Order 9. UPS' arguments to the contrary have no legal support. Therefore, the sole issue is whether UPS can satisfy the elements of § 3(L) of Wage Order 9, which it cannot and which it has failed to accomplish in its motion.

In *Gomez v. Lincare,* 173 Cal.App.4th 508 (2009), the Court noted the distinctions between California and federal overtime laws, and noted at Footnote 7 that California has both a daily (8 hour) and weekly (40 hours) overtime provision,

whereas federal law only provided for a weekly provision (40 hours). *Gomez, supra*, at 517. The *Gomez* Court held that therefore the California MCA could only apply on a daily basis and only on the days in which a qualifying employee actually drove. *Gomez* at 517-518. Thus, UPS' claim that the MCA bars all of plaintiffs' overtime claims is without any factual or legal support, since the California MCA is at best a day by day exemption, and not a complete bar.

In support of its finding that the MCA did not apply on days in which the driver did not drive, the *Gomez* Court relied on § 50.9.2.1 of the DLSE Manual and stated:

> "As relevant to this appeal, the 2002 Update of the DLSE (Division of Labor Standards Enforcement) Enforcement Policies and Interpretations Manual (Revised) (Enforcement  Manual) provides: "**The IWC exemption only applies to employees whose regular duty is that of a driver, not any other category of worker**. The policy would cover employees regularly employed as relief drivers or as assistant drivers. However, *any driver who does not drive or operate a truck for any period of time during an entire workday is entitled to overtime premium compensation for all overtime hours worked performing duties other than driving during that day*. [Citation.]" ( *Id.,* § 50.9.2.1, p. 50-11, italics added, <http://www. dir. ca. gov/dlse/ DLSE Manual/dlse-enfc manual.pdf>     [as of April 3, 2009].)

> "In support of this interpretation, the Enforcement Manual cites *Crooker v. Sexton Motors, Inc.* (1st Cir.1972) 469 F.2d 206. The *Crooker* court determined that even de minimis interstate driving activity affected the safety of interstate motor vehicle operations, making the employee's activities subject to federal Department of Transportation regulations governing hours of work, and, therefore, the employee was exempt from the Fair Labor Standards Act of 1938's overtime provisions. (*Id.* at pp. 209-210.) The court additionally determined that, during weeks where the employee did not perform any interstate driving activities, he would be entitled to receive overtime pay. (*Id.* at pp. 210-211.)" *Gomez* at 517-518 (emphasis in bold added, italics in original).

The *Gomez* Court relied upon the Northern District's March 17, 2008 opinion in *Wamboldt v. Safety-Kleen Systems, Inc.*, 2008 WL 728884 (N.D. Cal.),

which also relied on § 50.9.2.1 of the DLSE Manual. *Wamboldt* further held that because California has a daily overtime requirement, whereas federal law provides for a weekly overtime requirement, "the logical conclusion to be reached vis-a-vis the California motor carrier exemption is that California more broadly awards overtime for days in which drivers are not covered by the exemption." *Wamboldt, supra*, at *8.

Because it is undisputed that plaintiff is a supervisor, not a driver, the California MCA does not apply, as *Gomez*, *Wamboldt* and § 50.9.2.1 of the DLSE Manual make clear. Further, it is undisputed that Sweet's regular duty was not that of a driver, as made clear not only by UPS' moving manager declarations but also by Par. 6 of the Declaration of Timothy Thompson and its exhibits thereto. Also, because California's MCA is a daily exemption – and not the overall exemption which defendant seeks – summary judgment must be denied.

While UPS may argue that this Court may not rely on the DLSE's interpretation of the California MCA, both *Gomez* and *Wamboldt* found the DLSE's interpretation instructive and persuasive, as should this Court. The *Gomez* Court was well aware of the permitted use of the DLSE Manual, stating at Footnote 6:

> "FN6. Although not controlling, the DLSE's interpretation of the motor carrier exemption in the Enforcement Manual is instructive. (*Isner v. Falkenberg/Gilliam & Associates, Inc.* (2008) 160 Cal.App.4th 1393, 1399, 73 Cal.Rptr.3d 433.) We give to the Enforcement Manual whatever persuasive weight it carries. (*Sumuel v. ADVO, Inc.* (2007) 155 Cal.App.4th 1099, 1109, 66 Cal.Rptr.3d 622.)

In *Wamboldt v. Safety-Kleen Systems, Inc.*, 2008 WL 728884 (N.D. Cal.), the Court specifically found that plaintiff Wamboldt would be entitled to overtime on days in which he did not transport hazardous materials. Thus, it is abundantly clear that UPS' reliance on the federal MCA is misplaced, and that even in a worst

case scenario for plaintiff, the California MCA would only apply to plaintiff on the days in which she actually drove a qualifying vehicle for UPS.

C.     Plaintiff's hours of service were not regulated by the Department of Transportation.

UPS has failed to provide any authority or evidence that Sweet's hours of service were <u>actually</u> regulated by the U.S. Department of Transportation ("DOT"), as is required under §3(L)(1) of Wage Order 9. UPS fails to even make the argument that Sweet's hours were regulated by the DOT. UPS only asserts that Sweet was "subject to DOT regulation" at page 22, line 3 of its motion, but that is not enough, as Wage Order 9 requires that Sweet actually <u>be regulated</u> by the DOT, not subject to. UPS' failure to provide any evidence that Sweet was actually regulated by the DOT is simple: Sweet's work hours were not regulated by the DOT because Sweet was a supervisor, not a driver. On that basis alone the MCA does not apply.

49 CFR §§ 395.1 to 395.13 sets forth a statutory scheme which regulates the hours of service for the driver-employee and requires certain record-keeping tasks to be completed by the driver-employee and/or the employer. It is undisputed that no such records were kept for Sweet, because Sweet's hours of service were not regulated by the DOT and UPS has never contended that Sweet's hours of service were actually regulated by the DOT.

For example, 49 CFR § 395.8 requires every motor carrier to require its drivers to record his or her duty status for each 24 hour period. This includes recording the employee's duty status for the 24 hour period as (1) off –duty; (2) sleeper berth (if applicable); (3) driving; and (4) on-duty[3] not driving. See 49 CFR

---

[3] 49 CFR § 395.2 defines "on duty time" as all work from the time a driver begins to work or is required to be in readiness to work until the time the driver is relieved from work and all responsibility for performing work.

§ 395.8(b). Each change of duty status must be recorded. 49 CFR § 395.8(c). The total hours worked must also be recorded, such that there is a record of the employee's activities for the entire 24 hour period. 49 CFR § 395.8(d)(6),(10); 49 CFR § 395.8(f)(11). UPS did not require Sweet to keep such records, and in fact, UPS claims that it has no records which state the exact hours worked by Sweet.

The only exemption from the 24 hour reporting requirements of 49 CFR § 395.8 occurs in 49 CFR § 395.1(e). Under this provision, the driver-employee must return to the work reporting location and be released from work within 12 consecutive hours (49 CFR § 395.1(e)(ii)) and UPS must retain for a period of 6 months accurate and true time records showing:

(A)    The time the driver reports for duty each day;

(B)    The total number of hours the driver is on duty each day;

(C)    The time the driver is released from duty each day; and

(D)    The total time for the preceding 7 days in accordance with § 395.8(j)(2) for drivers used for the first time or intermittently.

It is undisputed that UPS did not comply with or enforce 49 CFR § 395.1(e) with respect to Sweet. UPS did not record the time Sweet reported to work each day, did not record the number of hours Sweet was on duty each day, and did not record the time Sweet was released from duty each day. UPS did not do this because it has known at all times that Sweet's hours of service were not regulated by the DOT precisely because Sweet was a supervisor, not a driver. Unlike the way it treated its drivers, UPS never put a 12 hour limit on Sweet's workday, and Sweet often worked over 12 hours per day.

Because Sweet's hours of service were not regulated by the DOT, the first prong of Wage Order 9, §3(L) fails as a matter of law.

**D.    Plaintiff's hours of service were not regulated by 13 CCR § 1200 et seq.**

§3(L)(2) of Wage Order 9 requires that Sweet's hours of service be actually regulated by 13 CCR § 1200 et seq. Once again, the MCA fails as Sweet was under no such regulation, and UPS fails to address this prong, thereby conceding that it does not apply.

13 CCR § 1200 et seq. only pertains to farm labor vehicles and the vehicles listed in Vehicle Code §§ 34500 and 34500.1. As relevant herein, 13 CCR § 1200 et seq. only pertains to a commercial motor vehicle with a gross vehicle weight rating of 26,001 pounds or greater or a truck transporting hazardous materials (see Vehicle Code § 34500(g), (k)). UPS does not assert that Sweet transported hazardous materials or drove a commercial motor vehicle in excess of 26,001 pounds. Therefore, UPS has failed to meet the requirements of §3(L)(2) of Wage Order 9 and the California MCA does not apply.

**E.    The California MCA does not exempt UPS from paying for all hours worked.**

In asserting the MCA, UPS erroneously contends that the MCA would bar all overtime claims and implies that Sweet is required to work for free after eight hours. Once again UPS ignores rules of statutory construction.

§ 3(A) of Wage Order 9 sets forth the premium overtime wage of 1.5 times the regular rate of pay for each hour worked over 8 hours per day or over 40 hours per workweek.

§ 4(B) of Wage Order 9 provides that "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage **for all hours worked** in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." (emphasis added).

If applicable (which it is not), § 3(L) only eliminates the premium pay of time-and-a-half. It does not eliminate § 4(B)'s requirement to pay for "all hours worked". This is evident from the reference in § 3(L) that "The provisions of this section are not applicable …" (emphasis added).

In *Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949 (2005), the Court explained the statutory construction of Wage Order 9 and the applicability of § 3(L), and held that § 3(L) only applied to the provisions of § 3 and no other sections of Wage Order 9, stating "truck drivers are not exempted from the other requirements of wage order No. 9." Therefore, even if the MCA applied, Sweet would be entitled to be paid for all hours worked pursuant to § 4(B).

The obligation to pay for all hours worked and for missed meal and rest periods remains even if the MCA applies. In fact, UPS does not dispute that Plaintiff would be entitled to compensation for missed meal and rest periods if the MCA applied.

In *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 324 (2005) the Court held that employees must be paid their normal hourly rate for all hours worked. While the defendant argued that Labor Code § 1194 only required that the employee received at least minimum wage for all hours worked, the trial court disagreed. Otherwise, the trial court concluded, adopting the employer's method of "averaging" would permit the employer to extract lengthy work weeks from its employees without paying them for all hours worked, in violation of California's policy of liberally construing California wage and hour provisions for the benefit of the employee. *Armenta* at 321-322.

An employee may only go uncompensated for all hours worked over eight hours per day if the employee is exempt under the executive, administrative or professional exemptions established in § 1 of Wage Order 9. UPS is not entitled to Plaintiff's free labor if § 3(L) applied, and plaintiff would still be entitled to be

paid at her regular hourly rate as calculated by Labor Code § 515(d)[4] for all hours worked over eight per day.

## VIII

## PLAINTIFF WAS DENIED MEAL AND REST BREAKS

As shown in the Sweet and Marlo declarations, plaintiff was not allowed to take meal and rest breaks. Under UPS' culture, it was expressly understood that you were not to take an uninterrupted, non-working meal or rest break. Further, the workload at UPS was so heavy that there was no opportunity to take a non-working meal or rest break. Accordingly, summary judgment must be denied.

## IX

## THE UNFAIR COMPETITION CLAIM IS VALID

UPS contends that plaintiff's unfair competition claim is barred because plaintiff was properly classified as exempt. However, as shown above, there are disputed issues of fact on that subject. Moreover, as a current employee whom UPS refuses to pay overtime, plaintiff's claims increase every day. Thus, summary judgment must be denied.

## X

## THE WAGE STATEMENT CLAIMS ARE VALID

UPS claims that plaintiff must prove that UPS willfully failed to keep records of her hours worked and that she has not been damaged by such failures. UPS is wrong. The burden is on UPS, not plaintiff. Further, this issue is derivative of the misclassification issue, for which, as shown above, there are multiple triable issues of material fact. Further, in opposing the unfair competition claim, UPS

---

[4] Labor Code § 515(d) provides "For the purpose of computing the overtime rate of compensation required to be paid to a nonexempt full-time salaried employee, the employee's regular hourly rate shall be 1/40th of the employee's weekly salary."

contends that plaintiff cannot specify the exact amounts owed. That is because UPS failed to keep track of plaintiff's hours, as employers are required to do. Thus, UPS' own argument supports that plaintiff has been damaged.

As triable issues of material fact exist, summary judgment must be denied.

## XI

## SWEET CAN RECOVER CIVIL PENALTIES

UPS falsely contends that plaintiff cannot recover civil penalties pursuant to Labor Code §§ 225.5, 226.3, 558 and 1174.5 because plaintiff did not exhaust her administrative remedies. UPS is wrong, and attempts to mislead this Court.

Labor Code § 2699.5 lists the specific Labor Code sections for which administrative remedies must be exhausted before a plaintiff can file suit. Labor Code §§ 225.5, 226.3, 558 and 1174.5 are not listed in Labor Code § 2699.5. Thus, once again UPS attempts to mislead this Court by misstating the applicable law, and civil penalties are proper and recoverable.

## XII

## CONCLUSION

For all of the foregoing, the motion must be denied in its entirety.


Date: July 11, 2010                    FURUTANI & PETERS, LLP


By: _____-s-_____
    JOHN A. FURUTANI
    Attorneys for Plaintiff